In the Matter of the ESTATE OF Mildred Jacquelyn BERGER, Deceased.

No. 10–04–00358–CV.

Court of Appeals of Texas, Waco.

Aug. 24, 2005.

D. Lee Alford, D. Lee Alford PC, Bryan, for appellant.

Roger Bridgwater, Houston, MS, for appellee.

Billy M. Payne, Payne, Watson, Miller & Malechek, PC, Bryan, for ad litem.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Tami Berger Martin intervened in the administration of the Estate of Mildred Jacquelyn Berger who was alleged to have died intestate. Martin contended that the decedent (Jackie) had in fact executed a will and a trust agreement (the Berger Trust) under which Martin was to receive an interest in certain real and personal property upon Jackie's death. Jackie's husband Clyde, the administrator of her estate, filed a no-evidence summary judgment motion contending that: (1) Martin could produce no written evidence of the purported trust agreement signed by Jackie; (2) Martin could produce no evidence that Jackie's purported will was witnessed by two persons above the age of fourteen years; and (3) Martin could produce no evidence that Clyde had lost or destroyed the purported will. The court granted Clyde's summary judgment motion.

Martin contends in four issues that: (1) because the trust agreement was lost, she provided other evidence under Rule of Evidence 1004 sufficient to defeat the summary judgment motion regarding the existence of the Berger Trust; (2) because the will was lost, she provided other evidence under Rule 1004 sufficient to defeat the summary judgment motion on the issue of whether Jackie's will was witnessed by two persons above the age of fourteen years; (3) she presented sufficient evidence to defeat the summary judgment motion on the issue of whether Clyde lost or destroyed Jackie's will; and (4) she presented some evidence that the Berger Trust is irrevocable and the court erred in holding otherwise.

## Standard of Review

To defeat Clyde's no-evidence summary judgment motion, Martin had to produce more than a scintilla of probative evidence to raise a genuine issue of material fact on each of the challenged elements. *See* TEX.R. CIV. P. 166a(i); *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex.2003). We review the summary judgment *de novo. Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). In so doing, we view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *See Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex.2000); *Watson v. Dallas Indep. Sch. Dist.*, 135 S.W.3d 208, 219 (Tex.App.-Waco 2004, no pet.).

## The Berger Trust

Martin contends in her first issue that because the trust agreement was lost, she provided other evidence under Rule of Evidence 1004 sufficient to defeat the summary judgment motion regarding the existence of the Berger Trust. She contends in her fourth issue that she presented some evidence that the Berger Trust is irrevocable and the court erred in finding none.

The statute of frauds found in the Texas Trust Code requires a person seeking to enforce a purported trust in real property to present "written evidence of the trust's terms bearing the signature of the settlor or the settlor's authorized agent." TEX. PROP.CODE ANN. § 112.004 (Vernon 1995). However, Rule of Evidence 1004 allows the admission of "other evidence of the contents of a writing" if the original has been lost or destroyed. *See* TEX.R. EVID. 1004(a);[1] *see also Travis County Water Control & Improvement Dist. v. McMillen*, 414 S.W.2d 450, 452 (Tex.1966); *Bank of Am. v. Haag*, 37 S.W.3d 55, 58 (Tex. App.-San Antonio 2000, no pet.); *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 267 n. 1 (Tex.App.-Corpus Christi 1994, writ denied).

■ "Loss or destruction may be established by proof of search for the document and inability to secure it." *Travis County Water Control & Improvement Dist.*, 414 S.W.2d at 453; *see also* 2 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 1004.2 (3d ed. 2002) ("Proof that the original is lost normally consists of testimony describing a fruitless diligent search.").

Here, Martin stated in the affidavit she filed in response to Clyde's summary judgment motion that she first saw a 5–6 page document in a folder labeled "Trust" which was in Jackie's possession in late 2000/early 2001. According to Martin, the first page of the document:

> indicated that certain real property and personal property owned by [Jackie and Clyde] was described in Schedules "A" and "B" to the document [and] were held in trust for [Martin's] benefit, that [Jackie and Clyde] would serve as Trustees of that Trust, and that all of the assets held in that Trust would be transferred to [Martin] at the death of the last of the two Trustees.

■ Martin stated that four days before Jackie's death, Jackie asked Martin to read her will and the trust document and make copies of them. Martin read the

---

1. The other subdivisions of Rule 1004 permit the admission of other evidence of the contents of a writing if "[n]o original can be obtained by any available judicial process or procedure," "[n]o original is located in Texas," the original is in the possession of a party opponent, or if the writing "is not closely related to a controlling issue." TEX.R. EVID. 1004(b), (c), (d), (e).

documents but did not make copies at that time. A few days after Jackie's death, Martin saw the trust document on the kitchen counter in the Bergers' home. Several days later, Clyde asked Martin if she had Jackie's will. Martin told Clyde that she last saw the will and the trust document on the kitchen counter. Clyde could not find them.

Martin's affidavit provides more than a scintilla of evidence that the trust agreement was lost. *See Forbes,* 124 S.W.3d at 172. Therefore, "other evidence" was admissible to prove the contents of the trust agreement. *See* TEX.R. EVID. 1004(a); *Travis County Water Control & Improvement Dist.,* 414 S.W.2d at 452; *Bank of Am.,* 37 S.W.3d at 58; *EP Operating Co.,* 883 S.W.2d at 267 n. 1.

■ A party seeking to establish an express trust[2] must show the existence of the intended trust property, object, and beneficiary with reasonable certainty. *Hubbard v. Shankle,* 138 S.W.3d 474, 483–84 (Tex.App.-Fort Worth 2004, pet. denied); *Barrientos v. Nava,* 94 S.W.3d 270, 280 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Tomlinson v. Tomlinson,* 960 S.W.2d 337, 338 (Tex.App.-Corpus Christi 1997, pet. denied). "A trust is created only if the settlor manifests an intention to create a trust." TEX. PROP.CODE ANN. § 112.002 (Vernon 1995); *accord Hubbard,* 138 S.W.3d at 484; *Barrientos,* 94 S.W.3d at 280.

■ Viewed in a light most favorable to Martin the non-movant, Martin's affidavit provides the following evidence regarding the property, object, and beneficiary of the Berger Trust.

Martin stated in her affidavit that Jackie told Martin "on many occasions that she intended for [Martin] to be her heir." She stated that that the trust document "indicated that certain real property and personal property owned by [the Bergers] was described in Schedules 'A' and 'B' to the document [and] were held in trust for [Martin's] benefit." She stated that Jackie told her that "the document created an irrevocable trust for [Martin's] benefit."

Disregarding all contrary inferences, this evidence raises a genuine issue of material fact on the question of whether Martin is the beneficiary of the purported trust agreement and whether the object of the purported trust is to provide for Martin's welfare.

Martin stated in her affidavit that Jackie told her that the Bergers had transferred "all of the 'land and personal property' " they owned into the trust. Martin attached to her affidavit nine deeds, duly recorded in the Official Records of Brazos County, by which the Bergers conveyed certain properties to themselves as Trustees "in conformity with the terms of a certain Declaration of Trust known as the Berger Trust." This evidence raises a genuine issue of material fact on the question of what property is held under the purported trust agreement.

Martin also stated in the affidavit that Jackie told her that "the document created an irrevocable trust." Thus, a genuine issue of material fact remains on the question of whether the purported trust is revocable or irrevocable.

Accordingly, we sustain Martin's first and fourth issues.

---

**2.** An "express trust" is "a fiduciary relationship with respect to property which arises as a manifestation by the settlor of an intention to create the relationship and which subjects the person holding title to the property to equitable duties to deal with the property for the benefit of another person." TEX. PROP. CODE ANN. § 111.004(4) (Vernon Supp.2004–2005).

## The Will

Martin contends in her second issue that because the purported will was lost, she provided other evidence under Rule 1004 sufficient to defeat the summary judgment motion on the issue of whether Jackie's will was witnessed by two persons above the age of fourteen years. She contends in her third issue that she presented sufficient evidence to raise a genuine issue of material fact on the question of whether Clyde lost or destroyed the purported will.

Clyde argued in his no-evidence summary judgment motion that Martin could produce "no evidence that two (2) witnesses above the age of fourteen (14) in their own handwriting and in the presence of the Testator signed and subscribed their names as witnesses to [the purported] will." He also argued that Martin could produce no evidence that he had lost or destroyed the purported will.

With regard to the loss or destruction of the purported will, Martin stated in her affidavit that four days before Jackie's death, Jackie asked Martin to read her will and the trust document and make copies of them. Martin read the documents but did not make copies at that time. A few days after Jackie's death, Martin saw the will on the kitchen counter in the Bergers' home. Several days later, Clyde asked Martin if she had Jackie's will. Martin told Clyde that she last saw the will on the kitchen counter. Clyde could not find the will. Thus, Martin's affidavit provides more than a scintilla of evidence that the will was lost. *See Forbes*, 124 S.W.3d at 172.

With regard to witnesses to the purported will, Martin stated in her affidavit:

The final page of the will document bore the seal and signature of a notary public, plus the signatures of the two that I mentioned above. Immediately above those three signatures, I saw text which indicated (and I paraphrase) that the Decedent had told the notary and the witnesses that the preceding document was her last will and testament, that the witnesses had watched the Decedent sign the document, that the Decedent had watched the witnesses sign the document, and that each of the witnesses was over the age of fourteen (14) years at the time the document was executed.

Viewed in a light most favorable to Martin the non-movant, this constitutes more than a scintilla of evidence that "two (2) witnesses above the age of fourteen (14) in their own handwriting and in the presence of the Testator signed and subscribed their names as witnesses to [the purported] will." *See Forbes*, 124 S.W.3d at 172.

Accordingly, we sustain Martin's second and third issues.

We reverse the judgment and remand this cause to the trial court for further proceedings consistent with this opinion.