*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-11-00710-CV

**DIMMIT COUNTY MEMORIAL HOSPITAL**,
Appellant

v.

**CPM MEDICAL, LLC**,
Appellee

From the 293rd Judicial District Court, Dimmit County, Texas
Trial Court No. 10-08-11250-DCV
Honorable Cynthia L. Muniz, Judge Presiding

Opinion by:     Rebecca Simmons, Justice

Sitting:         Karen Angelini, Justice
                 Sandee Bryan Marion, Justice
                 Rebecca Simmons, Justice

Delivered and Filed:  April 25, 2012

AFFIRMED IN PART, REVERSED IN PART AND RENDERED

Appellant Dimmit County Memorial Hospital appeals the trial court's denial of the Hospital's plea to the jurisdiction. On appeal, the Hospital contends (1) it has not waived its governmental immunity from suit on appellee CPM Medical's breach of contract cause of action, and (2) CPM's unconstitutional takings cause of action is untenable as a matter of law. We affirm the trial court's order denying the Hospital's plea to the jurisdiction as to CPM's contract

action and reverse the trial court's order denying the Hospital's plea to the jurisdiction as to CPM's takings claim and render judgment that the takings claim be dismissed with prejudice.

## BACKGROUND

The facts underlying this suit are hotly disputed. CPM, a medical supplier, contends that the Hospital, through Jerry Cervantes, an independent medical supplier, sought to obtain a Stryker 5 Drill System (the system) from CPM. After the Hospital allegedly accepted CPM's bid for the system, CPM delivered the system to Cervantes, who then delivered it to the Hospital. In their depositions, CPM's manager, Paul Spinks, and Cervantes testified that a written, executed contract—in the form of a signed invoice—existed for the sale of the system. However, CPM was unable to locate and produce the original, alleged contract. Instead, CPM offered the court an unsigned copy of the invoice.

The Hospital contends that there was no contract, and it did not accept delivery of the system from Cervantes or CPM. Rather, it argues that Dr. Bill Alexander, a physician with surgical privileges at the Hospital, brought the system to the Hospital. Dr. Alexander no longer performs surgeries at the Hospital and is not a party to the suit. It is undisputed that the Hospital is in possession of a Stryker 5 Drill System.[1]

CPM contacted the Hospital to collect the amount owing. The Hospital refused to pay. CPM filed suit for, *inter alia*, breach of contract and an unconstitutional taking. The Hospital challenged the trial court's subject matter jurisdiction by filing a plea to the jurisdiction. The trial court denied the Hospital's plea and entered findings of fact and conclusions of law. The court concluded that fact issues existed regarding whether the Hospital waived its immunity by its conduct and whether there was an unlawful taking. However, the court concluded that the

---

[1] The Hospital contends Dr. Alexander was performing surgeries at the Hospital with the Stryker system in early 2008, and the only drill system in its possession is the one Dr. Alexander left at the hospital months prior to the alleged delivery by CPM.

Hospital conclusively established there was no written contract that included the terms of the sale.[2] Specifically, the court concluded that CPM was entitled to pursue its theory of waiver of governmental immunity by conduct. The Hospital appeals the trial court's denial of its plea to the jurisdiction.

## PLEA TO THE JURISDICTION

On appeal, the Hospital does not challenge CPM's pleadings; rather, the Hospital challenges the jurisdictional facts in support of CPM's claim of waiver of immunity from suit. The Hospital contends it did not waive its governmental immunity to suit and the contractual waiver of immunity argued by CPM applies only to local governmental entities, not the Hospital. Alternatively, assuming it is a local governmental entity, the Hospital asserts there was no contractual waiver because (1) CPM could not produce a properly executed, written contract, (2) a waiver-by-conduct exception is not available to CPM, and (3) CPM's unconstitutional taking claim is untenable as a matter of law.

### A. Standard of Review

The determination of subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citing *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002)). In this case the plea to the jurisdiction challenged the existence of jurisdictional facts. *See id.* at 226–27. "When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists." *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam) (citing *Miranda*, 133 S.W.3d at 226). If a jurisdictional fact issue exists, the plea to the jurisdiction must be denied and the fact

---

[2] The court further concluded CPM "is not entitled to a trial under the theory of whether [the Hospital] waived its immunity from suit by contract."

issue will be determined by the fact-finder. *Miranda*, 133 S.W.3d at 227–28. Our standard of review is similar to that of summary judgment review: "[W]e take as true all evidence favorable to the nonmovant[, and w]e indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 228 (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

## B.  Governmental Immunity

The issues in this case focus on governmental immunity. Absent the State's consent to suit, sovereign immunity deprives a trial court of subject matter jurisdiction to hear a suit against the State. *Miranda*, 133 S.W.3d at 224 (Tex. 2004) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam)). Governmental and sovereign immunity include two distinct concepts: immunity from suit and immunity from liability. *See Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009); *Miranda*, 133 S.W.3d at 224. Immunity from liability is merely an affirmative defense; immunity from suit, however, is jurisdictional. *Tomball Reg'l Hosp.*, 283 S.W.3d at 842. A governmental unit waives immunity from liability by entering into a contract. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). However, waiver of immunity from suit for breach of contract requires a clear and unambiguous waiver by the legislature. *Id.* at 332–33; *Tomball Reg'l Hosp.*, 283 S.W.3d at 842.

## C.  Waiver of Immunity for Breach of Contract

The legislature has waived governmental immunity from suit for breach of contract where "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity [has been] properly executed on behalf of the local governmental entity." *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2) (West 2005); *Tooke*, 197

S.W.3d at 344.[3] A "local governmental entity" is "a political subdivision of this state, other than a county or a unit of state government, as that term is defined by Section 2260.001, Government Code, including a . . . special-purpose district or authority, including any . . . public health district, [or] emergency service organization." TEX. LOC. GOV'T CODE ANN. § 271.151(3) (West 2005); *Tooke*, 197 S.W.3d at 345 n.101.

## D. Analysis

### 1. *"Local Governmental Entity"*

In its pleadings, the Hospital asserted it was a political subdivision of the state. Further, in a motion to dismiss, the Hospital asserted it was a "unit of local government." For the first time on appeal, the Hospital contends it is not a local governmental entity and, therefore, the legislature has not waived its immunity from suit on the alleged breach of contract. Specifically, the Hospital argues that the legislature has not included "county hospital" in the list of political subdivisions under subsection (3) of 271.151 that have waived governmental immunity from suit. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(3).[4]

"[W]e strictly construe what may be considered in an interlocutory appeal." *See Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 834 (Tex. App.—Austin 2006, pet. denied) (citing *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (West 1997). Section 51.014(a)(8) of the Texas Civil Practice and

---

[3] Section 262.007, which is not applicable here, waives a county's immunity from suit for breach of contract claims involving electrical, architectural, and engineering services. *See* TEX. LOCAL GOV'T CODE ANN. § 262.007(d) (West 2005); *Tooke*, 197 S.W.3d at 342 (citation omitted).

[4] Section 271.151's definition of "local governmental entity" specifically excludes counties from the definition. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(3). However, the statutory definition includes public health districts and emergency service organizations. *Id.* Chapter 121(F) of the Health and Safety Code sets forth the requirements for establishing a public health district. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 121.041–.047 (West 2010). An "emergency service organization" is defined as "a volunteer fire department, rescue squad, or an emergency medical services provider that is: . . . operated by its members; and . . . exempt from state taxes by being listed as an exempt organization." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(1)(A) (West Supp. 2010); *see also Norrell v. Gardendale Volunteer Fire Dep't*, 115 S.W.3d 114, 117 (Tex. App.—San Antonio 2003, no pet.).

Remedies Code permits an interlocutory appeal from an order that grants or denies a plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2011); *Lowery*, 212 S.W.3d at 834. Our review of the plea to the jurisdiction should be limited to what was considered by the trial court. *See Lowery*, 212 S.W.3d at 834 ("[W]e confine our review to the ruling on the plea to the jurisdiction that was actually filed and do not address whether the district court erred in denying the plea on a ground that was not argued below."); *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (same); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 687 (Tex. App.—Dallas 2003, pet. denied) (same). If we were to consider the Hospital's point on appeal, it would deprive CPM of the opportunity to respond with evidence controverting the claim that the Hospital is not a local governmental entity. This issue is better addressed by the trial court. Accordingly, we will not consider for the first time on appeal whether the Hospital meets the statutory definition of "local governmental entity."

  2. *Breach of Contract*

  The Hospital contends that even if it is a local governmental entity, there was no waiver of immunity because there is no written contract stating the essential terms of the agreement, a necessary requirement by statute. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2) (West 2005). CPM responds that there was some evidence of a written contract sufficient to raise a fact issue to defeat the plea to the jurisdiction. We turn then to whether there was evidence of a written contract stating the essential terms of the agreement.

  "In general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000) (citing *T.O. Stanley Boot Co., Inc. v. Bank of El*

*Paso*, 847 S.W.2d 218, 221 (Tex. 1992)); *see also Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010) ("The Agreements here are written contracts stating their essential terms. The *names* of the parties, *property* at issue, and *basic obligations* are clearly outlined." (emphasis added) (citing *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006))). The mere fact that a written, signed contract cannot be produced because it has been lost does not preclude a party from establishing the existence of the alleged contract. *See Bank of Am. v. Haag*, 37 S.W.3d 55, 58 (Tex. App.—San Antonio 2000, no pet.); *accord EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 267 n.1 (Tex. App.—Corpus Christi 1994, writ denied) (citations omitted). "[T]he existence and terms of a [lost contract] may be shown by clear and convincing parol evidence." *Haag*, 37 S.W.3d at 58.

### a. Written agreement

CPM's manager, Paul Spinks, testified that the Hospital signed an invoice, and the invoice contained a purchase order number that was provided by the Hospital. While CPM cannot produce the original, signed invoice, CPM submitted to the trial court a copy of the unsigned, written invoice.

### b. Essential terms

Next, we must determine whether the invoice contained all the essential terms of the agreement such that it can be considered a written contract. Taking as true CPM's evidence that an invoice was signed identical to the unsigned copy of the invoice, the unsigned copy of the invoice submitted to the trial court contained all essential terms of the agreement. *See Kirby Lake Dev.*, 320 S.W.3d at 838 (determining a contract contained all essential terms where the contract listed the parties, the property at issue, and the basic obligations of the parties). The invoice identifies both parties to the agreement and provides a purchase order number that was

allegedly sent to Cervantes or CPM by the Hospital. The invoice also clearly identifies the property at issue and specifically itemizes the components of the system. Finally, the invoice sets forth the basic obligations required of both parties: the invoice shows a purchase order number, indicating the Hospital's intent to purchase the system, and it indicates that the Hospital is to "remit" $19,800.00 for the system. Accordingly, CPM has submitted some evidence of a contract that contained all essential terms of the alleged contract. *See id.*

c. Goods provided to a local governmental entity

Neither party disputes that the system is a "good"; therefore, the requirement of section 271.151(2) that the agreement provides for goods or services is met. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2). The statute also requires the goods be provided to a local governmental entity. In its petition and in its plea to the jurisdiction the Hospital asserted it was a governmental entity. As stated above, we will not address for the first time on appeal the Hospital's assertion that it is not a local governmental entity.

d. Proper execution

Finally, the statute requires that the contract be properly executed. *See id.* Resolving any doubts in CPM's favor, we conclude a fact issue exists as to whether the contract was executed. Two of CPM's witnesses testified that a written contract—in the form of an invoice—was signed by a hospital director. The mere fact that CPM cannot produce the executed document does not preclude it from suing on its breach of contract claim. *See Haag*, 37 S.W.3d at 58; *see also In re Estate of Berger*, 174 S.W.3d 845, 847 (Tex. App.—Waco 2005, no pet.); *Chakur v. Zena*, 233 S.W.2d 200, 202 (Tex. Civ. App.—San Antonio 1950, no writ).

Because CPM submitted some evidence that governmental immunity as to suit has been waived, a fact issue exists regarding whether the Hospital waived its immunity to CPM's breach

of contract claim. Consequently, the trial court did not err in refusing to grant the Hospital's plea to the jurisdiction on CPM's contract claim. *See Miranda*, 133 S.W.3d at 227–28.

### 3. Waiver-by-Conduct

CPM contends that if there is insufficient evidence to establish all of the statutory requirements for governmental immunity including a written contract, the Hospital's conduct in accepting benefits under the alleged contract waived the Hospital's immunity from suit. In its second point of error, the Hospital argues that the legislature has not waived sovereign immunity under a waiver-by-conduct theory. While we have affirmed the trial court's order denying the Hospital's plea to the jurisdiction on the breach of contract claim, we will address CPM's waiver of governmental immunity-by-conduct argument in the interest of judicial economy and efficiency. *See Whittington v. City of Austin*, 174 S.W.3d 889, 906 (Tex. App.—Austin 2005, pet. denied); *Wheelways Ins. Co. v. Hodges*, 872 S.W.2d 776, 782 (Tex. App.—Texarkana 1994, no writ).

The Texas Supreme Court has repeatedly rejected this type of broad waiver-by-conduct exception for breach of contract claims against governmental entities.[5] A narrow waiver-by-conduct exception exists only where the State initially waives immunity, enters into a settlement agreement, and then fails to honor the settlement agreement. *See Tex. A & M Univ.–Kingsville v. Lawson*, 87 S.W.3d 518, 522–23 (Tex. 2002) (plurality opinion). This narrow exception is not applicable here.

Because the legislature has not clearly and unambiguously waived immunity for a governmental unit's conduct in a breach-of-contract claim, a waiver-by-conduct exception, under

---

[5] *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011); *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *Catalina Dev., Inc. v. Cnty. of El Paso*, 121 S.W.3d 704, 706 (Tex. 2003); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002); *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 593 (Tex. 2001).

these facts, is not available to CPM. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (stating that a governmental unit "does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract"); *e.g.*, *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002); *cf. City of Houston v. Swinerton Builders, Inc.*, 233 S.W.3d 4, 12–13 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (concluding that the legislature did not intend to waive governmental immunity for claims of quantum meruit brought under section 271.152). Thus, the Hospital's conduct in accepting the benefit of the Stryker drill system did not waive its governmental immunity. The trial court erred in concluding that the Hospital's conduct waived its immunity from suit.

### UNCONSTITUTIONAL TAKING

Finally, the Hospital claims that the trial court erred in concluding that a fact issue existed under CPM's unlawful takings claim. Relying heavily on *Little-Tex*, the Hospital contends CPM's claim is nothing more than a contract dispute and, therefore, does not rise to the level of a constitutional taking. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598–99 (Tex. 2001). CPM argues that the Hospital is not immune from its properly pleaded governmental takings claim.

A governmental entity is not shielded by sovereign or governmental immunity from claims of unconstitutional takings. *See id.* at 598 (citing *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980); *State v. Biggar*, 848 S.W.2d 291, 295 (Tex. App.—Austin 1993), *aff'd*, 873 S.W.2d 11 (Tex. 1994)). The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17(a); *accord Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 56 (Tex. 2006). To establish a takings claim, a

party must prove "(1) the State intentionally performed certain acts, (2) that resulted in a 'taking' of property, (3) for public use." *Little-Tex*, 39 S.W.3d at 598 (citing *Steele*, 603 S.W.2d at 788–92). If a plaintiff fails to allege a valid takings claim, governmental immunity applies and a plea to the jurisdiction should be granted. *Bell v. City of Dallas*, 146 S.W.3d 819, 825 (Tex. App.—Dallas 2004, no pet.); *accord City of Laredo v. Duarte*, No. 04-06-00226-CV, 2006 WL 1895482, at \*2 (Tex. App.—San Antonio July 12, 2006, no pet.) (mem. op.). However, when a governmental unit withholds money or property under the "color of right" pursuant to a contractual right, it "does not have the requisite intent under constitutional-takings jurisprudence." *Little-Tex*, 39 S.W.3d at 598–99; *accord Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 844 (Tex. 2010).

Without pleading in the alternative, CPM alleges in its petition that "Defendant sought out [CPM] for the procurement of the Stryker 5 Drill system subject of this lawsuit, received said system from [CPM], and has refused [CPM] compensation for its property." CPM presented evidence that it received an offer from the Hospital, delivered the goods to the Hospital, the Hospital accepted delivery, and then the Hospital refused to pay. Both the evidence and the pleadings reviewed in the light most favorable to CPM reflect that the Hospital obtained possession of the Stryker unit through the agreement of the parties, and thus under "color of right." CPM's pleadings and evidence simply allege a breach of contract rather than a takings claim. *Cf. Bell*, 146 S.W.3d at 825. Accordingly, CPM cannot establish the Hospital's intent under our takings jurisprudence. *See Little-Tex*, 39 S.W.3d at 598–99; *accord Kirby Lake Dev.*, 320 S.W.3d at 844; *State v. Steck Co.*, 236 S.W.2d 866, 869 (Tex. Civ. App.—Austin 1951, writ ref'd) ("[Plaintiff] by making the contract, manufacturing the [goods] and delivering them to the State did so voluntarily and with its own consent, and can not now say the [goods] were taken

under the power of eminent domain."). The trial court erred in denying the plea to the jurisdiction on CPM's takings claim and such claim should be dismissed with prejudice. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639–40 (Tex. 2004) (holding that disposition of a plea to the jurisdiction based on sovereign immunity is with prejudice).

## CONCLUSION

The trial court properly denied Dimmit County Memorial Hospital's plea to the jurisdiction based on CPM's contract claim.[6] The trial court erred in denying the plea to the jurisdiction on CPM's takings claim. Accordingly, we affirm the trial court's order with respect to CPM's breach of contract claim, and reverse its order on the takings claim and render judgment that CPM's takings claim should be dismissed with prejudice. Based on our disposition to affirm in part and reverse in part and render, we conclude that there is good cause to apportion costs of this appeal equally between Dimmit County Memorial Hospital and CPM Medical. *See* TEX. R. APP. P. 43.4; *Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 621 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Rebecca Simmons, Justice

---

[6] As we note in the opinion, the trial court erred in its conclusions of law that (1) there was no fact issue as to a written contract, and that (2) the Hospital waived its immunity from suit by its conduct. However, we are not bound by a trial court's incorrect conclusions of law. *See LaChance v. Hollenbeck*, 695 S.W.2d 618, 622 (Tex. App.—Austin 1985, writ ref'd n.r.e.); *see also O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 243 (Tex. App.—San Antonio 1998, pet. denied). Despite the trial court's incorrect conclusions, the trial court's denial of the plea directed to CPM's contract claim was correct.